## Epley *against* Witherow.

One who stands by and sees his property sold at sheriff's sale as the property of another person without giving notice of his title, will thereby be barred from recovering it in ejectment: and such notice must be given by the party interested in the property and in the course of the treaty for the purchase.

Whatever is sufficient to put the purchaser upon an inquiry, which would necessarily have led him to a discovery or knowledge of the adverse claim or interest in the land, is sufficient to affect him with notice thereof.

In such case, if the land had previously been offered for sale, and the plaintiff and defendant were both present, it would be competent for the defendant to prove that the plaintiff then gave no notice of his title.

In an action of ejectment by a vendor against the sheriff's vendee of a title held by articles of agreement, evidence of a release of the original purchaser from liability to the vendor, which reserves expressly his right to the land, is no bar to the plaintiff's recovery.

WRIT of error to the special court of *Adams* county.

This was an action of ejectment by David Witherow against Samuel B. Epley, eldest son and heir at law of Peter Epley deceased, against whom the original action was brought to recover the undivided moiety of one hundred and fifty acres of land, with a merchant mill, saw mill, &c., thereon erected.

The parties claimed under the same original title which was in Christian Routzong. The plaintiff gave in evidence a deed dated

[Epley v. Witherow.]

16th of March 1812, from Christian Routzong to David Witherow the plaintiff and Samuel Witherow.

The defendant then gave evidence to show that Samuel Witherow had been in the exclusive possession of the land and mills since 1814, and proved the declarations of David Witherow, made about that time and afterwards, that he had sold to Samuel Witherow; and also evidence tending to prove the consideration paid by Samuel to David, and that the land was taxed in the name of Samuel ever after 1814.

Defendant then gave in evidence a judgment against Samuel Witherow, an execution levied upon the land 11th of September 1822, a *venditioni exponas* to November term 1823, and a sale of the whole tract of land, as the property of Samuel Witherow, on the 10th of November 1823, to the defendant Peter Epley, who received the sheriff's deed therefor, dated 17th January 1824. He then called witnesses to prove that David Witherow was present at the sale by the sheriff and gave no notice of his title.

To rebut this the plaintiff gave evidence to prove that he entered into a parol agreement with his brother Samuel Witherow in 1814 to sell to him his moiety of the land, but that Samuel never complied with the conditions of the agreement, and that in 1822 the contract between them was rescinded. To establish these facts the plaintiff offered in evidence a memorandum in writing made by Alexander Russell, Esq., the scrivener employed by them to prepare the deed and bonds in 1814 in the presence of both parties; to be followed by proof that Samuel never complied with the terms mentioned in the memorandum, and that the parties in 1822 went to Mr Russel and destroyed the deed which he had prepared, and rescinded the agreement. The defendant objected to the admission of the paper in evidence, on the ground that it was a mere private memorandum of Alexander Russel Esq., and did not purport to contain an agreement between the parties. But the court overruled the objection and sealed a bill of exception at the request of the defendant.

The plaintiff offered Samuel Witherow as a witness, to whom the defendant objected on the ground that he was interested in the recovery of the land by David, for he thereby would be released from liability to pay David for the moiety he agreed to purchase from him. David Witherow then executed the following release.

"I David Witherow, for and in consideration of the sum of one dollar to me paid, do hereby release and acquit Samuel Witherow, his heirs and assigns, from all liabilities to me for or on account of money paid by me to Ch. Routzong, or any other person or persons, in discharge of the purchase money of the land bought by the said Samuel and myself from the said Ch. Routzong, or from any other liabilities for moneys paid by me for the said Samuel; I holding and claiming my own interest in the said land so purchased by us. Witness my hand and seal, the 28th September 1837."

The court then overruled the objection to the competency of the witness, and he was sworn.

[Epley v. Witherow.]

In the further progress of the cause the defendant offered the said release in evidence, on the ground that its legal effect, in discharging Samuel from the payment of the purchase money to David, was the same as if Samuel had paid it, and thereby vested the whole title in Samuel, which would enure to the benefit of Peter Epley who had purchased Samuel's title. The evidence was objected to by the plaintiff, and rejected by the court who sealed a bill of exceptions.

It became a matter of fact for the determination of the jury, whether David Witherow gave notice of his title at the sheriff's sale. On this subject much evidence was given by each party; and upon that evidence the plaintiff requested the court to charge the jury upon the following point.

"If the jury believe that when David Witherow knew of the sheriff's sale of Samuel's property, he went to the place of sale and employed counsel on the subject of his interest in the land selling, and the said counsel did give notice to the sheriff then selling the land of David's title, who went to the crier at his instance and ordered the crier to proclaim to the bidders that it was the interest of Samuel Witherow in the land he was selling, and the crier did at the time make public proclamation accordingly, and repeated it more than once, that such conduct of David Witherow, although present when the land was sold to Epley, is not such as would deprive David of his title, particularly if David's deed was on record at the time."

To which the court gave the following answer.

"I am of opinion that the law is not as stated in this point. If David Witherow was present, and knew that land in which he had an interest was selling, it was his duty to have had more distinct notice given. His employing counsel, and speaking to the sheriff as mentioned in the point, and getting the crier to proclaim that it was the interest of Samuel Witherow that was selling, was not sufficient. He ought to have gone further, and given notice of his own title, or some distinct intimation that Samuel's interest did not amount to the whole estate in the land, so as to put the bidders upon their guard, that they might be induced to make inquiry into the matter, and ascertain how the case actually stood. *If the notice given by the crier was, that the sale was of Samuel Witherow's interest only, it would be sufficient.* If no such notice was given, the plaintiff cannot recover here, and the verdict must be for the defendant. If such notice was given at the plaintiff's request, he may recover."

The jury rendered a verdict for the plaintiff.

*Stevens,* for plaintiff in error.
*Watts* and *Alexander,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—Among the many errors assigned, there are two, and only two, either of which, we think, is fatal to the judgment of the court below; they are the seventh, and fourteenth or last; the

VII.—P

[Epley v. Witherow.]

other errors cannot be sustained, and will be passed without further notice, with the exception of two or three of them.

First, As to the second error, which is a bill of exception to the opinion of the court in refusing to permit the plaintiff in error, who was the defendant below, to prove by John Stockslayer, that David Witherow and Peter Epley were both present at the sale of the land in question the first time, when it was struck down to Solomon M'Linn. That it was sold as the property of Samuel Witherow, and that there was no notice or intimation by any one that the property did not belong to him. In order to judge of the relevancy and bearing of the proof offered here to be made, it is proper to take into consideration, that in the course of the trial it had been previously shown, and indeed admitted by both parties, that David and Samuel Witherow were originally joint owners of the land in question, by purchase from Christian Routzong; that as such, both had taken, and were in the actual possession thereof for some time, when, as it appeared from the evidence, David Witherow quit the possession and gave it up exclusively to Samuel Witherow, who apparently continued to exercise acts of ownership over the land as the sole owner thereof, and to receive and enjoy the whole of the rents, issues and profits of the same, without having accounted to David at any time for them, or any portion thereof, from the period the latter surrendered the entire possession to the former down to the time of the sheriff's sale at which the plaintiff in error became the purchaser of the land; also that some evidence was given, tending to prove that the giving of the exclusive possession by David to Samuel, was in pursuance of an agreement made between them, whereby David sold his interest in the land to Samuel, and then moved away and purchased other land for himself exclusively. Now, under these circumstances and this state of the evidence, we are of opinion that what was offered to be proved by Stockslayer, tended still further to show and to corroborate the fact of David's having parted with his interest in the land to Samuel; otherwise, being present and seeing the whole of it about being sold as the property of Samuel alone, he would in justice to those bidding at the sale, as well as to himself, have given notice of his right to it. We therefore think this evidence ought to have been received; and that the court erred in rejecting it.

We come now to consider the fourteenth error, which is an exception to the opinion of the court, as expressed in the latter part of their answer to the second point submitted by the counsel of the plaintiff below, for their direction thereon to the jury. It relates to the notice and the sufficiency of it; said to have been given at the instance of David Witherow, of his claim to the land, when it was selling last by the sheriff, as the property of his brother, Samuel Witherow. That part of the answer excepted to is in these words: "if the notice given by the crier was, that the sale was of Samuel Witherow's interest *only*, it would be sufficient. If no such notice was given, the plaintiff can-

[Epley v. Witherow.]

not recover here, and the verdict must be for the defendant. If such notice was given at the plaintiff's request, he may recover.

Notice is either actual or constructive; but there is no difference between actual and constructive notice in its consequences. *Amb.* 626; *Sugd. Vend., ch.* 17, *sect.* 1, *page* 731. Actual notice, which is what David Witherow, being present at the sale, ought to have given in this case, requires no definition; for it is universally understood and cannot be misapprehended by any one, and must be given by the party interested in the property and in the course of the treaty for the purchase. Vague reports from persons not interested in the property will not affect the purchaser's conscience; nor will he be bound by notice in a previous transaction which he may have forgotten. *Sugd. Vend., ch.* 17, *sect.* 1, *pp.* 731, 732; Wildgoose *v.* Weyland, *Goulds.* 147, *pl.* 67; Cornwallis's Case, *Toth.* 254; East Greenstead's Case, *Duke* 64; Kerns *v.* Swope, 2 *Watts* 78. A mere assertion, that some other person claims a title, has not only been held to be insufficient to affect a purchaser with notice, but it has been doubted, whether a general claim will do so, of which the purchaser does not appear to have had a previous knowledge. Kerns *v.* Swope, 2 *Watts* 78; Tolland *v.* Stainbridge, 3 *Ves.* 478. This court, however, ruled, in the case of Barnes *v.* Mylington, 3 *Penns. Rep,* 67, that actual notice given by the party, or his agent, of his claim generally to the land at the time of sale, without specifying the nature of his title, or in what way he claimed it or an interest in it, was sufficient to put the purchaser upon inquiry, and to have enabled him, if he desired it, to have ascertained the nature of the claim, and how it was derived from the party making it, who would have been bound to have answered fully at his peril. It is well settled, that whatever is sufficient to put the purchaser upon an inquiry, which would necessarily have led him to a discovery or knowledge of the adverse claim or interest to or in the land, is sufficient to affect him with notice thereof. Though in regard to what is sufficient to put the party on such inquiry, it may, occasionally, be a matter, about which a diversity of opinion may be entertained; yet in the present case, it is hardly possible to conceive how there can be any but one and the same opinion. The most favourable testimony for the defendant in error, showing that any thing was said or published at the time of the sheriff's sale, which was calculated to put Epley, the purchaser, on his guard and to lead him to a knowledge of the claim of the defendant in error in the land, is, that " the crier very loudly, distinctly and emphatically requested all present to take notice, that it was *only* the interest of Samuel Witherow he was then selling. This he repeated several times." Now as the sale was making under the authority of judicial process, it is very clear that, the process being against Samuel Witherow, and not David, the interest of the first was all that could be sold; so that all that was said by the crier was no more than what the law implied and every one was bound to know. But David Witherow was present himself

at the sale, and, it seems, it was at his instance, though not known then to the bidders, that the crier gave the notice mentioned ; and why he did not, if he thought he had a good claim to the land and intended to assert it, either himself in person, or by the crier or some other agent, explicitly make it known, it is difficult, consistently with principles of fair dealing, to conceive, instead of concealing it as he did, and leaving those wishing to buy the land to find it out as they could, and when it might be too late to provide against it.    It is perfectly obvious, from all that was said by the crier, that no one present could ever have conjectured or even dreamed that David Witherow had any claim to the land.    But being present and seeing that the whole of the land was levied on and about to be sold as the estate of Samuel Witherow, it was certainly his duty to have spoken then, if he meant thereafter to assert his claim, otherwise he ought and will be stopped from doing so.    *Qui tacet consentire videtur, qui potest et debet vetare jubet.*    See the East India Company *v.* Vincent, 2 *Atk.* 83 ; Hanning *v.* Ferrers, 1 *Eq. Ca. Abr.* 356, *pl.* 10 ; *Gilb. Eq. Ca.* 85 ; Raw *v.* Potts, *Pre. in Ch.* 35 ; Hunsden *v.* Cheney, 2 *Vern.* 150 ; the case cited in Styles *v.* Cooper, 3 *Atk.* 692 ; Jackson *v.* Cator, 5 *Ves.* 688 ; Dunn *v.* Spencer, 7 *Ves.* 731 ; Cholmondely *v.* Clinton, 2 *Meriv.* 362 ; Covert *v.* Irwin, 3 *Serg. & Rawle* 283 ; Buchanan *v.* Moore, 13 *Serg. & Rawle* 306 ; Nass *v.* Vanswearingham, 10 *Serg. & Rawle* 144 ; Higginbothom *v.* Barnet, 5 *Johns. Ch. Rep.* 184 ; Teasdale *v.* Teasdale, *Sel. Ca. in Ch.* 59 ; Pearson *v.* Morgan, 2 *Bro. Ch. Ca.* 384 ; Pilling *v.* Armitage, 12 *Ves.* 78 ; Dowling *v.* Mill, 1 *Madd. Rep.* 541 ; Taylor *v.* Cole, 4 *Mund.* 351 ; 1 *Wash. Rep.* 317 ; Livingston *v.* Byrne, 11 *Johns.* 565 ; Green *v.* Price, 1 *Mund.* 449 ; Owen *v.* Bartholomew, 9 *Pick.* 520 ; where this doctrine is established and recognized to the fullest extent.    But here, it is said, David Witherow had put his deed of conveyance or title on record, before the sale to the plaintiff in error, where he, as well as every body else, could inspect and was bound to take notice of it. But as this deed had been in being for many years before, and withheld from record until shortly before the sale to the plaintiff in error, and not until after the prior sale, which was set aside, at which David Witherow also attended without making his claim known, as the plaintiff in error offered to show, it is most probable, if not certain, that he must have believed that the most, if not all, of those present were wholly ignorant of his claim ; and being there himself without making it known to them, it is scarcely possible that it could have entered into their minds to conceive that he had a claim to the land which he would thereafter bring forward.    Under these circumstances, it was quite as necessary, in order to avoid the imputation of fraud, that he should have given express and direct notice of his claim to the land, if he meant thereafter to insist upon it, as if his deed had still been in his desk unrecorded.    It does not appear that any person, who was a bidder at the sale, had the least notion of his claim ; and it is impossible to believe that he was not fully

[Epley v. Witherow.]

aware of this being the case with them at the time ; and yet he forbears to make it known, stands by, seeing and hearing them bid for the land as if it belonged entirely to his brother Samuel. Would it not then be fraudulent in him now, after having conducted himself thus, to take from the purchaser an undivided moiety of his purchase ? It is plain that to permit him to do so would be, to permit him to act against good conscience, and to practise a most gross and palpable fraud.

We therefore think that the court erred in not instructing the jury, that the plaintiff below, if he meant to hold on to his claim to the land, should have given *express* and *direct* notice of it to the bidders at the sheriff's sale ; but not having done so, even according to his own evidence, he could not recover.

Having thus disposed of the only errors assigned which are considered well founded, it may not be improper to notice the third and fourth errors, which relate to the " memorandum" as it is called, made by Alexander Russell, Esq., and the admission of it in evidence by the court. It appears to us, that the court were right in permitting it to be read in evidence to the jury, because there was some evidence given which tended to prove that it was the agreement of David and Samuel Witherow, reduced to writing by Russell in their presence as such. And although it was competent for the defendant below to repel this evidence, by showing that the memorandum was not made with a view of committing to writing the agreement of the parties, but was made by Russell as a memorandum for his own private use ; yet it was a question of fact, contested by the parties, which could only be determined by the jury, and therefore it became the duty of the court to submit it to them with all the evidence given in relation to it.

The only remaining matter, deemed worthy of a passing notice, is contained in the thirteenth error ; which is an exception to the opinion of the court in rejecting the releases offered to be read in evidence by the counsel for the plaintiff in error. The court decided correctly in rejecting them, as they could not be made to subserve the purpose for which they were offered, that is, to show that by their effect, in law at least, the consideration money which Samuel Witherow was to have paid to or for David, on account of getting his interest in the land, had been satisfied so as to give Samuel or his assignees the full benefit of it in the same manner as if it had actually been paid by Samuel, by vesting in him, or the plaintiff in error as. his assignee, all David's original right to and in the land. This, however, cannot be, because it appears on the face of the release that David executed it in consideration of his still being permitted to hold his interest in the land, which Samuel, by accepting the release, may be said to have assented to. It therefore amounted to nothing as regarded the rights of others ; and can neither advance nor prejudice them,

Judgment reversed, and *venire de novo* awarded.