## FARLEY v. STOKES and TYRELL.

While it is the law that a lease by parol for more than three years is within the statute of frauds—yet there are exceptions which have been recognised by Courts of Equity, when the case is apparently within the letter of the statute.

Part performance of the contract is shown by delivery of possession to the vendee, or lessee, and valuable improvements made in consequence thereof. In all cases in which part performance is set up in order to avoid the operation of the statute, the act relied upon must be unequivocally referable to the agreement. The ground on which Courts of Equity exclude the operation of the statute, is fraud. For a party who has permitted another to perform acts, on the faith of a parol agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if no agreement ever existed; this would be a *fraud*.

In cases where the parol proof of the *factum* of a contract for the sale or leasing of lands is clear; where possession of the land has been shown to have been delivered to the vendee, or lessee, in pursuance of a final agreement set up; and where valuable improvements have been made by such vendee, or lessee, on the faith of such parol contract, and posterior to the delivery of such possession; the course of Courts of Equity has been uniform, to enforce them.

Whatever is sufficient to put the purchaser upon inquiry, which would necessarily have led him to a discovery, or knowledge of the adverse claim, or interest to or in the land, is sufficient to affect him with notice of it.

Courts of Equity in this state have jurisdiction to compel the specific performance of a contract for the sale or leasing of land, even when a party may have a remedy at law. The rule which guides Courts of Equity is this, whether a party has an adequate and complete remedy in a Court of Law. Where complete justice cannot be done, Courts of Equity will entertain the case.

*Jan.* 26. THIS was a bill filed by Farley against Stokes and Tyrell, setting forth that Stokes was the owner of a house situate in Spring Garden, and that the plaintiff was a druggist, and being desirous to obtain a lease of said house for a term of years, as a drug shop, by his agent negotiated a lease for the same, when it was completed and put in tenantable order; and that, on the 20th of October, 1847, the said Stokes agreed with the agent of the plaintiff to lease the said premises to the plaintiff for the term of ten years, at a certain rent, to be increased after the two first years, setting forth the particulars of the contract; and the only reason why the lease was not executed was the unfinished state of the building, and uncertainty as to the time of its completion; but, relying upon the promised lease, the plaintiff, on the 23d day of

December, 1847, entered upon said premises, although still in an unfinished state, and proceeded to fit it up for a drug store, and expended the sum of $300 and more about the same, relying upon the fulfilment of said contract by said Stokes. He placed the necessary fixtures upon the premises to enable him to carry on said business; and during the time he was engaged in fitting up the premises, he had frequent conversations with said Stokes, in which he frequently spoke of the said agreement and lease; and that the plaintiff paid the first quarter's rent, and subsequently tendered to said Stokes a lease for execution, in pursuance of the terms of the contract, when, for the first time, he was apprised of the intentions of said Stokes refusing to execute a lease, although he admitted that he had promised to give him a lease for ten years.

It was then averred in the bill, that, on or about the 15th of December, 1848, Charles Tyrell, the other defendant, appeared at the store of the plaintiff with a notice from said Stokes, directing the complainant to pay the rent to said Tyrell, and that subsequently, on the 10th of January, 1849, he paid the rent to Tyrell, for which he obtained a receipt. The bill also stated, that it was in violation of said contract made by Stokes, of which Tyrell was fully aware before his alleged or pretended purchase from said Stokes. Also that said Stokes has combined with said Tyrell to turn the complainant out of said premises; in pursuance of said combination said Stokes gave notice to him to remove from said premises, and that subsequently to said notice, and in pursuance of said combination, the said Stokes pretended to sell the premises to said Tyrell, who did, on the 16th day of January, apply to two justices under the Act of Assembly to remove him from the possession of the same. That on the said trial, Stokes was offered as a witness; that the jury did not agree, and were discharged; and subsequently the plaintiff has requested said Tyrell to execute a lease in conformity with said agreement, which he refused, and now threatens to call another jury, until one can be found that will agree.

The bill then prayed for a disclosure under oath by said defendants, respecting their knowledge of said contract, and of all the matters and things charged in said bill. Interrogatories were also inserted in said bill upon all the facts charged. The bill also prayed that the contract might be specifically performed, and the defendants be decreed to execute a lease of said premises according to the terms of said agreement; the plaintiff offering to perform his part of the same.

The defendants filed separate answers to the bill. Stokes, in his answer, admitted he had rented the premises to Farley for a year; but denied that he had ever agreed to lease it to him for ten years. He admitted that the plaintiff had gone into possession by his consent, and that he had placed fixtures and other improvements on the premises for his particular business and convenience.

Tyrell filed his answer, and stated that he had purchased the premises, and received a deed for the same from Stokes; that, at the time of the purchase, Stokes told him that Farley was in the possession under a lease from him for one year; *that he claimed that Stokes had agreed to give him a lease for ten years;* but Stokes denied that he had made any such agreement with Farley, and it was under these circumstances he purchased the premises, and claimed to be the owner.

· The cause was heard on bill, answers, and proofs. Numerous witnesses testified positively as to the acknowledgment of Stokes that he had leased the property to Farley for ten years. One of them, who acted as his agent in the negotiation, wrote the terms of the bargain to the plaintiff, on the day that Stokes agreed to it. The improvements put upon the premises by Farley were proved to have cost $391, which would be an almost entire loss, if he was compelled to quit. One witness proved that before the execution of the deed to Tyrell, Farley told Tyrell that Stokes had agreed to lease it to him for ten years; that he would insist upon the execution of the contract, nor would he surrender the possession.

The cause was argued by Mr. *Todd* for the plaintiff, and Mr. *Robb* for the defendant, Tyrell.

Mr. *Todd* argued from the facts that Stokes admitted in his answer that he had no objections to giving a lease for ten years, substantially upon the terms set forth in the bill, nor did he ever countermand the offer; and admits the conversation with Palethorpe, the agent of the plaintiff. Also, he admitted that Farley put on the improvements; nor is the amount disputed. He also admits the payment of two quarters' rent, and the tender of the lease to him for signing. He also contended that Palethorpe proved the bargain positively, and produced the memorandum in writing made by him the same day and sent to the plaintiff. And that Stokes directed him to let Farley know that he could have the property for ten years; that he did, and Farley went to see Stokes, and that Stokes subsequently told him it was all fixed, and

that all the dispute that ever arose between the parties was in relation to the rent for the first five years.

It was then contended that one witness proved the entire bargain, accompanied by a note in writing made at the time; and that six other witnesses prove that at various times Stokes admitted to them he had leased it to Farley for ten years.   He cited 1 Greenl. Evid. 545, § 437; 12 S. & R. 84.   He also contended that the proof was clear as to the improvements, which would not have been made but upon the basis of a long lease; and if the plaintiff could not have the benefit of it, the loss would be great.   That all this was evidence of part performance of the contract as made by the parties

It was also contended that the statute of frauds did not prevent the plaintiff from a recovery, for this case was an exception, by the proof of part performance, and that it would be a fraud on the plaintiff if it was not enforced.   To sustain this, he cited Ewing *v.* Tees, 1 Binn. 455; Jones *v.* Morphett, 1 Swanston, 172; Roberts' Digest, 81; 2 Strange, 771, 783; 1 Mad. ch. 381; 1 Smith, 394, note; 1 Dallas, 424; Pugh *v.* Good, 3 W. & S. 61, 62; 2 Rawle, 53; 14 S. & R. 261; 1 W. & S. 389.   The Court has jurisdiction; the statute gives it: Act 16th June, 1836, Dunlop's Dig. 743, 814, 951.

It was also contended Tyrell had notice.   1. The plaintiff was in possession at the time : that was notice.   It is admitted in the answer, that Stokes told him Farley claimed a lease for ten years, and was a troublesome tenant; this should have put him on inquiry; and then we have the positive proof, by a witness, that Farley told Tyrell, before the execution of the deed, that he claimed a lease for ten years, and that he would not surrender the possession.

For the defendant, it was contended by Mr. *Robb*, that the Court had no jurisdiction of the cause, and cited 1 Bald. 394; Baker *v.* Biddle.   That the plaintiff had a remedy at law.   Gilder *v.* Merwin, 6 Wh. 540; 7 W. & S. 107; 2 Penna. Rep. 299.   2. That this contract was no fraud.   Cited 2 Story, 29, § 769.   Same, section 1528.   3.  That the contract was within the statute of frauds and perjuries, which was specially pleaded in the answer, and that the whole bill was denied in the answer; and if established by proof, it was but a parol contract, which could not be enforced.

To sustain this, he cited Story Eq. Juris. vol. 2, § 758; 2 Story, § 764; 19 Vesey, Jr. 476; 3 Watts, 138; 1 Watts, 383.

Also that improvements by a lessee for his own convenience

54                          2 N 2

give no equity; 6 Watts, 510; 2 Whart. 392; 9 Barr, 59, 164. It must be a clear case to take the case out of the statute of frauds: Story, 766; 9 Watts, 111; 7 Barr, 93; 1 Madd. Ch. 416; 5 S. & R. 443; 4 Rawle, 38; 3 Barr, 134; 2 Sim. & Stewart, 29.

It was further contended that the application was against a *bonâ fide* purchaser, and this must be taken for granted because sworn to by the defendant: 2 Sumner, 295; 5 Binn. 129; 8 S. & R. 484; 2 Ashe, 313; 14 Peters, 77.

It was contended that, under the facts, the contract was not sufficiently proved; that the leasing was for but a year, and that this was but an attempt to change the original contract of the parties. That all the improvements could be referred to a leasing for but a year, and that the plaintiff knew the tenure by which he held the property when he made them. That inasmuch as there was no written lease, it would be against the plain terms of the statute to attempt to enforce this pretended contract.

That as to Tyrell, he was a *bonâ fide* purchaser, and there was not sufficient proof by the witnesses, nor what was admitted by his answer, to put him on inquiry; that, at all events, it was not notice, such notice as the law required to affect one who had purchased the property and paid his money for the same, nor should a Court of Equity give countenance to such a claim.

The opinion of the Court was delivered by

KING, President.—From the evidence we cannot doubt, that as a question of mere fact, the complainant has sustained the case set out in his bill. The denial by the defendant Stokes in his answer of the *factum* of the contract, is sufficiently met by the positive testimony of John H. Palethorpe, sustained by a series of collateral facts and circumstances, equivalent in their effect to a second witness. These combined proofs show very clearly, that Stokes being the owner of an unfinished house in this county, agreed to lease it when completed to the plaintiff for ten years, at a progressively increasing rent. That in pursuance of this contract, Farley entered into possession of the demised premises, and made valuable, though perhaps not permanent improvements thereon, in order to render the house suitable for his business, that of an *apothecary* and *druggist*. No written lease was ever executed by Stokes to Farley. While the latter was in the possession and enjoyment of the property, under this parol lease, Stokes conveyed it in fee to Charles Tyrell, the other defendant. The bill charges that Tyrell made this purchase with actual knowledge of the state of the complainant's

rights. Tyrell in his answer denies such knowledge, but admits that at the time of the execution of the deed, he inquired of Stokes in regard to the tenant of the property, and of the terms upon which he occupied it; and was informed that he held the same under a written agreement for one year, which would expire on the 10th of January, 1849. That Stokes had found Farley a very troublesome tenant, and that he had at one time *set up a claim* for a verbal lease for ten years, but that such pretence was without the least foundation. Wetherill Patterson, a witness produced by the complainant, proves, that about the middle of December, 1848, Tyrell called upon the complainant at his store with a notification from Stokes, informing him that he, Stokes, had sold the property to Tyrell, and the rent was in future payable to the latter. In this conversation Patterson proves that Farley fully stated the nature and extent of his claim on the property, and that Tyrell, during the conversation, said that the deeds were either to be *drawn or executed* that day. This testimony, taken in connexion with Tyrell's answer, establishes, either that he had positive notice of Farley's claim before the consummation of the contract of sale, or at least that he had information and notice enough to put him on the necessary inquiries to ascertain the truth, before closing the bargain.

The necessities of the case, therefore, have compelled the defendants to place the stress of their defence on the statute of frauds. That the case is within the letter of the statute, is quite clear. It is founded on a supposed lease for more than three years by parol, and "not put in writing." Do the facts bring it within any of the exceptions which Courts of Equity have recognised as existing in cases apparently within the letter of that statute?

Among the most familiar of these exceptions is part performance of a contract of sale or lease, shown by delivery of possession to the vendee or lessee, and valuable improvements made in consequence thereof. In all cases in which part performance is set up, in order to avoid the operation of the statute, the act relied upon must be unequivocally referable to the agreement. The ground on which Courts of Equity have allowed such acts to exclude the operation of the statute, is fraud. A party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if it had never existed. What shall constitute a part performance sufficient to take a given case out of the statute, has ever been a vexed question in the Court since chancery has at-

tempted to qualify the operation of the letter of the statute by the special equities of particular cases. The difficulties that have arisen in the practical application of this delicate jurisdiction, have led jurists to regret the extent of the liberality of Courts of Equity in this particular; and the tendency of modern decisions is certainly not to advance beyond the earlier doctrines, but rather to bring these within more precise and defined limits. But in cases in which the parol proof of the *factum* of a contract for the sale or leasing of lands is clear; where possession of the land has been shown to have been delivered to the vendee or lessee *in pursuance of the parol agreement set up;* and where valuable improvements have been made by such vendee or lessee, on the faith of such parol contract, and posterior to the delivery of such possession, the course of equity in enforcing such contracts has been steady and uniform.

The books are full of reports of such cases, and it is treated by elementary writers as doctrine. In cases between vendor and purchaser, less difficulty has arisen in the application of this doctrine, than in those between *landlord* and *tenant.* In the former, the act of delivering possession, in pursuance of a parol contract, is an unequivocal one. In the latter, inasmuch as possession is incident to every lease, the delivery of possession to the lessee possesses no such inherent force. In cases between landlord and tenant, when the tenant is in possession at the time of the agreement, and only continues in such possession, in most cases this possession amounts to nothing. " Possession had before the agreement, and continued after it," says Chief Justice Tilghman, " is of too doubtful a nature to be considered as proof of part performances." Jones *v.* Peterman, 5 S. & R. 546. But that a parol lease for more than three years may be taken out of the act by the delivery of possession, if the agreement is *clearly* proved, seems admitted by the Chief Justice in this case, particularly if attended with improvements by the lessee: Ib. In Morphett *v.* Jones, 1 Swanston, 173, it was held by Sir John Leach, Master of the Rolls, that specific performance of a parol agreement might be decreed on the testimony of one witness, confirmed by circumstances against the denial in the answer, *after part* performance by delivery of possession. It was with great propriety that the plaintiff relied on this authority, because it covers his whole case, as well in regard to the quantum of proof to establish the parol agreement, as the effect of the agreement when so established. It is even stronger than the present, because it seems ruled on the grounds of proof of the

agreement, and possession delivered in pursuance of it; without any pretence of improvements made on the faith thereof.

In the case of Pugh *v.* Good, 3 W. & S. 36, the whole doctrine of the English chancery, concerning part performance of contracts for land, has been reviewed in a very able and learned opinion by the present Chief Justice. He concludes that it has been adopted as the law of Pennsylvania, under our Act of Assembly against frauds and perjuries, notwithstanding the omission in the latter of the 4th section of the English Act. And he asserts the doctrine on which Sir Thomas Plumer seems to have ruled Morphett *v.* Jones: viz. *that delivery of possession alone is part performance.* Of course, whether delivery of possession be an unequivocal act of part performance, must depend on the circumstances of the particular transaction. This may, nay, certainly does, become a more complicate question in controversies of this sort between landlords and tenants, than in those between vendors and vendees. The danger of the fraudulent assertion of a long parol lease, by a tenant, in order to retain the possession of a convenient leasehold, is certainly a real one. But the difficulties which involve the ascertainment of a fact, are no evidence of its non-existence. And the dangers of fraudulent practices by a tenant, seeking to sustain the existence of such an agreement, should, of course, be considered in weighing the proof on which he pretends to establish it. If, in such a case, the Court should doubt, it can withhold its aid; because the specific execution of a contract is not a matter of absolute right in the party, but of sound discretion in the Court. Hence, it requires much less strength of case on the part of the defendant to resist a bill to enforce a contract, than it does on the part of the plaintiff to maintain a bill to enforce a specific performance. Story Eq. Juris. § 769.

The plaintiff's case, however, does not exclusively depend on the direct and collateral proofs of the agreement. These are strongly fortified by all the probabilities of the transaction, which may be fairly taken into account always in estimating the force of evidence. He was about establishing a business in a new neighbourhood, which necessarily demanded time and present expense for its accomplishment. Now, that for this purpose he would lease a house for one year, and expend between three and four hundred dollars in putting it in order, seems most unreasonable; while that he should seek to obtain a lease for a time sufficient to justify his expectations, and authorize this expense, is precisely what any prudent man would have done under the like circumstances. These expenditures, made

on the faith of a promised lease, form an important item in the equity of his case. In Jones v. Peterman, it is said that if a parol lease, accompanied by the possession delivered in pursuance of it, is attended with improvements by the lessee, it certainly will be established. In such cases, the Court proceed in the enforcement of the contract, on the ground of the manifest fraud it would be on the party making the improvements, to permit the vendor to escape from a due and strict fulfilment of the agreement: Story, § 761. To avoid the effect of these expenditures made by the complainant, the defendants argue that improvements made by a tenant for his own accommodation and convenience, give him no equity against his landlord; and this is quite true as an abstract proposition. But when such improvements have been made on the faith of an agreement for a lease, on which the tenant has entered into possession, they have a very different effect. They then furnish the most cogent reasons for a Court of Equity to compel specific performance of the agreement.

It has been urged that the plaintiff has been guilty of laches, in not seeking earlier the aid of this Court to compel the execution of the agreement: and cases have been cited to show that equity always requires a party seeking to enforce a specific performance to be ready, prompt, and eager. None of these were, however, cases in which the party asking aid has been in the possession and enjoyment of the subject-matter of the contract. In such a case he may well rest on the security of his imperfect contract, and it is time enough for him to seek the aid of the Court when the other party shows a disposition to avoid its effects. This was the case here. For the complainant filed this bill immediately after the defendants commenced proceedings at law to eject him from his possession. In this state of its circumstances, this case is identical with that of Morphett v. Jones; in neither the learned counsel who argued the case nor the Court notice the idea of laches. An omission not likely to have occurred, if the objection had any force.

It is said that this is an application against a *bonâ fide* purchaser, and as such ought not to be entertained. But *he* only is a *bonâ fide* purchaser who is a purchaser without notice of the claimant's equity. While a purchaser of the legal title cannot be affected by any latent equity of which he has no notice, it is equally clear, that such notice actually and fully proved against him takes away his *bona fides*, and puts him *in mala fide*. And it is well settled, that whatever is sufficient to put the purchaser upon an inquiry which would necessarily have led him to a disco-

very or knowledge of the adverse claim or interest, to or in the land, is sufficient to affect him with notice of it: Epley v. Witherow, 7 Watts, 167. That the purchaser had in this case actual notice of the complainant's rights before his contract was completed, is in direct proof; and the admissions in his answer show that he was, from the commencement of the negotiation with Stokes, in possession of such information in relation to Farley's claim as was amply sufficient to put him on inquiry thereto. In the equity sense of the term, therefore, he cannot be regarded as a *bonâ fide* purchaser.

The last question raised by the defendants is that which denies the jurisdiction of the Court, upon the ground that the plaintiff can by a recovery of damages have an adequate remedy at law. The admission of this doctrine would divest us practically of all jurisdiction to compel specific performance of real contracts, certainly one of the most useful heads of our jurisdiction. The question has, however, been considered and determined in many past decisions of this Court. In Dalzell v. Crawford, ante, p. 37, which arose on a bill filed by *vendor* against *vendee*, it came up as a direct question for decision, and the jurisdiction was sustained. The reasons for this conclusion are there stated, and need not here be repeated. In the case of Rich v. King (not reported), the question again came up on a bill filed by *vendor* against *vendee*, and received the like determination. The same question *in principle* was agitated in Bank of Kentucky v. The Schuylkill Bank, ante, p. 180; and the grounds on which equity will interfere, although the plaintiff might have proceeded at law, is there very fully discussed. As that case has been affirmed by the Supreme Court, it must be hereafter regarded as authority for the principles settled by it. The principle ruled in Dalzell v. Crawford was that the clause in the Act of the 16th of June, 1836, which authorizes this Court to " afford specific relief when a recovery in damages would be an inadequate remedy," is but declaratory of the settled principles on which Courts of Equity have long acted in the administration of specific relief. If this principle is sound, and of this we entertain no doubt, then the equity jurisdiction of this Court and the Supreme Court, under the head of specific performance of real contracts, rests on the same basis as that of other Courts of general equity jurisdiction. That such Courts possess jurisdiction to compel the specific execution of a contract to sell or lease lands, is indisputable. Why they exercise it, and why they deem the

remedy at law inadequate in such cases, are things so familiar that we should not be justified in further discussing them after our past decisions.

The complainant must therefore have our decree directing the defendant Stokes to execute to him a lease with the usual covenants, as of January 1848, for ten years; which lease must be confirmed by the defendant Tyrell by an appropriate legal instrument, to be prepared by the plaintiff; and Tyrell must be perpetually enjoined against proceeding against Farley at law, to recover the possession of the demised premises, on the ground that his lease had expired, and that he is a tenant holding over against his landlord. The question of costs is reserved for further order, although at present we incline to decree them against Stokes alone, as Tyrell seems to have been led to the course he has pursued in the case from confidence in the declarations of Stokes, that no such agreement as that alleged by Farley ever had existence.  Before, however, acting on such an impression, we will hear Stokes's counsel on this question, if he desires it.   The case of Morphett v. Jones is a precedent for a decree for costs against the landlord alone, where the purchaser of the land was a party to the bill filed by the tenant against the landlord.   This question, however, we regard as open, as reasons may be given that such a discrimination as to costs would not be proper.