## Hill *et al. versus* Epley *et al.*

A tenant in common, whose deed is on record, and who, being present when the land is put up at sheriff's sale, under a judgment against his co-tenant, causes notice to be given that it was only the interest of the judgment-debtor which was being sold, is not estopped from asserting his title against the purchaser.

Epley *v.* Witherow, 7 *Watts* 163, overruled.

The primary ground of the doctrine of equitable estoppel by *matter in pais*, is, that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted.

The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up.

The doctrine resting thus upon the supposed existence of fraud, it is essential to its being allowed in any case, that it would work an injury, if the party alleged to be estopped should be permitted to set up his case.

If, therefore, the truth be known to both parties, or if they had equal means of knowledge, there can be no estoppel by the silence of one of them.

The facts necessary to work an estoppel must appear affirmatively.

Whatever puts a party on inquiry, amounts to notice, provided the inquiry becomes a duty (as it always is with a purchaser), and would lead to the discovery of the requisite fact, by the exercise of ordinary diligence and understanding.

ERROR to the Common Pleas of *Adams county.*

This was an ejectment by Johnston Hill and wife, and Harriet Witherow and others, against Samuel B. Epley and Jacob Myers, for the undivided moiety of a tract of 150 acres of land, with a grist-mill, saw-mill, and other improvements, in Cumberland township. There was a former ejectment for the same premises, which is reported in 7 *Watts* 163.

Both parties claimed under Christian Routzong, who, on the 16th of March 1812, conveyed the premises to David Witherow, the ancestor of the plaintiffs, and Samuel Witherow, under whom the defendants claimed title. This deed was recorded on the 12th August 1823.

On the 10th November 1823, the property was levied on by the sheriff, and sold by virtue of an execution against Samuel Witherow. David Witherow was present at the sale. Notice was given by the crier, "*that it was only the interest of Samuel Witherow which was being sold.*"

On the trial, the court below instructed the jury, under the authority of the case of Epley *v.* Witherow, 7 *Watts* 163, that if David Witherow was present at the sale, the notice given was not sufficient; that it was his duty to give explicit notice of his title— to say, he claimed the one undivided half of the premises.

To this charge the plaintiffs excepted; and a verdict and judgment having been rendered for the defendants, the plaintiffs sued out this writ, and here assigned the same for error.

[Hill *et al. v.* Epley *et al.*]

*W. H. Miller* and *Hepburn*, for the plaintiffs in error, after reviewing the authorities cited by Judge KENNEDY, in Epley *v.* Witherow, 7 *Watts* 163, and the opinion of the court in that case, argued,

1. That estoppels are not to be favoured: Leicester *v.* Rehoboth, 4 *Mass.* 180; Bridgewater *v.* Dartmouth, *Id.* 273; Owen *v.* Bartholomew, 9 *Pick.* 520.

2. That a party who acts in ignorance of his rights shall not be prejudiced thereby: Lewis *v.* San Antonia, 7 *Texas* 288; Brewer *v.* Boston and Worcester Railroad Company, 5 *Met.* 478; Schultz *v.* Elliott, 11 *Humph.* 183; Whitaker *v.* Williams, 20 *Conn.* 98; Copeland *v.* Copeland, 28 *Maine* 525.

3. The general principle is, that the acts or expressions must have been intended to mislead: Morton *v.* Hodgdon, 32 *Maine* 127; Otis *v.* Sill, 8 *Barb. S. C.* 102; Ryerss *v.* Farwell, 9 *Id.* 615; Dyer *v.* Cady, 20 *Conn.* 563; Cowles *v.* Bacon, 21 *Id.* 451; Pierce *v.* Andrews, 6 *Cush.* 4; Cambridge Institution *v.* Littlefield, 6 *Id.* 210; Brown *v.* Wheeler, 17 *Conn.* 345; Kinney *v.* Farnsworth, *Id.* 355; Crockett *v.* Lashbrook, 5 *Monroe* 530; Bank *v.* Wollaston, 3 *Harrington* 90; Hicks *v.* Cram, 17 *Verm.* 449; Rangeley *v.* Spring, 21 *Maine* 130; Martin *v.* Angell, 7 *Barb. S. C.* 487; Copeland *v.* Copeland, 28 *Maine* 525.

4. The information which makes it the duty of a party to make inquiry, and shows where it may be effectually made, is notice of all facts to which such inquiry might have led: 1 *Curt. C. C.* 390; Ringgold *v.* Bryan, 3 *Md. Ch. Dec.* 488; Stockett *v.* Taylor, *Id.* 537; McGehee *v.* Gindrat, 20 *Ala.* 95; Tardy *v.* Morgan, 3 *McLean* 358; Lodge *v.* Simonton, 2 *Penn. R.* 445; Barnes *v.* McClinton, 3 *Id.* 67.

5. A party's mere presence and silence, in such a case as this, will not affect him: Batchelder *v.* Sanborn, 4 *Foster* 474; Valls *v.* Clemens, 18 *Miss.* 486; Cicotte *v.* Gagnier, 2 *Mich.* 381; West *v.* Tilghman, 9 *Ired.* 163; Schultz *v.* Elliott, 11 *Humph.* 183; Cambridge Institution *v.* Littlefield, 6 *Cush.* 210.

6. There is no estoppel *in pais*, unless the party who sets it up has, by the acts or declarations of the other party, been induced to believe the existence of facts inconsistent with the claims of such other party, and acted on such belief: Lawrence *v.* Brown, 1 *Seld.* 394; Carpenter *v.* Stilwell, 12 *Barb.* 128; Hunley *v.* Hunley, 15 *Ala.* 91; Taylor *v.* Toppe, 14 *Miss.* 482; Whitaker *v.* Williams, 20 *Conn.* 98; Dyer *v.* Cady, *Id.* 563; Pennell *v.* Hinman, 7 *Barb. S. C.* 644; Martin *v.* Angell, *Id.* 407; Bank *v.* Wollaston, 3 *Harrington* 90; and the English decisions are to the same effect: Freeman *v.* Cook, 12 *Jurist* 777; Pickard *v.* Sears, 6 *Ad. & Ellis* 469; Gregg *v.* Wills, 10 *Id.* 90.

Neither the former nor subsequent opinions of this court sustain Mr. Justice KENNEDY: Knouff *v.* Thompson, 4 *Harris* 364;

[Hill *et al. v.* Epley *et al.*]

Carr *v.* Wallace, 7 *Watts* 401; Crest *v.* Jack, 3 *Id.* 238; Alexander *v.* Kerr, 2 *Rawle* 90; Goundie *v.* Northampton Water Company, 7 *Barr* 233; Bellas *v.* McCarty, 10 *Watts* 25.

*Wills* and *Cooper*, for the defendants in error, relied upon the case of Epley *v.* Witherow, 7 *Watts* 163. They also cited 1 *Story's Eq.*, § 385; Storrs *v.* Barker, 6 *Johns. Ch.* 166, 172; Wendell *v.* Van Rensselaer, 1 *Id.* 354.

The opinion of the court was delivered by

STRONG, J.—The question presented by this record is, whether when a tract of land has been sold at sheriff's sale, under a judgment obtained against a tenant in common, and the co-tenant, whose deed was upon record, was present at the sale, and caused notice to be given that it was only the interest of the judgment-debtor which was being sold, such co-tenant is estopped from asserting his title against the purchaser.

Confining our attention to the facts which are material to the inquiry brought up here, we have the following:—

David Witherow and Samuel Witherow were owners as tenants in common, of a farm and mill property. They held under the same deed from Christian Routzong. Samuel lived upon the land, and David lived a few miles distant. A judgment was recovered against Samuel Witherow, upon which execution was issued and levied upon the property. It was condemned and sold on the 2d of August 1823, to Solomon F. Linn. That sale was set aside. On the 12th of August 1823, the deed to David and Samuel Witherow was recorded. The property was again sold on the 10th day of November 1823, under an alias *venditioni exponas*, and Peter Epley became the purchaser. At the second sale, David Witherow was again present, and by his attorney requested the sheriff to give directions to the crier that he claimed one-half·of the property as a tenant in common with his brother Samuel Witherow. The sheriff gave the directions requested, and the crier, in a loud and distinct voice, desired all present to take notice that it was only the interest of Samuel Witherow that he was then selling. This he repeated several times. The court below instructed the jury that these facts would deprive David Witherow of all right to claim the land, unless the purchaser had seen his title on record. The court further charged the jury that it was the duty of David Witherow, if he wished to secure his claim, and set it up against the purchaser at sheriff's sale, to give direct and explicit notice of his title,—in short, to say he claimed the one undivided half. Was this instruction correct?

The doctrine of equitable estoppel by *matter in pais*, has doubtless been greatly extended by the courts in modern times; yet, it· is not entirely without limits, and it professes to be founded upon

[*Hill et al. v. Epley et al.*]

the principles or natural justice. The general principle now is, that where the conduct of a party has been such as to induce action by another, he shall be precluded from afterwards asserting, to the prejudice of that other, the contrary of that of which his conduct has induced the belief. The primary ground of the doctrine is, that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. Thus, if a person *positively* encourage another to purchase either land or a chattel, he cannot afterwards assert any title in himself to the thing purchased, and this though he may have been ignorant of his rights when he gave the encouragement. For though, in the latter case, there may have been no fraudulent intent, yet the assertion of his title would operate as a fraud, as much so as if there had been a fraudulent purpose. Besides, the equitable principle is, that when a loss must befall one of two innocent persons, that one must bear it through whose act it was occasioned. It seems also to be well settled, that silence in some cases, will estop a party against speaking afterwards. Thus, if one suffers another to purchase and expend money upon a tract of land, and knows that that other has a mistaken opinion respecting the title to it, and does not make known his claim, he shall not afterwards be permitted to set up a claim to that land against the purchaser. His silence then becomes a fraud. But, silence without such knowledge works no estoppel. It is only when silence becomes a fraud, that it postpones : Beaupland *v.* McKeen, 4 *Casey* 124 ; Robinson *v.* Justice, 2 *Penn.* 19 ; Keeler *v.* Vantuyle, 6 *Barr* 253. The doctrine of estoppel, by *matter in pais*, resting thus upon the supposed existence of fraud, it is essential to its being allowed in any case, that it would work an injury, if the party alleged to be estopped should be permitted to set up his case. If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations, or silence of a party, he will not be estopped from contradicting them, even though they would be conclusive against his right if not contradicted : Dezell *v.* Odell, 3 *Hill* 215 ; Patterson *v.* Lytle, 1 *Jones* 53. If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel. Accordingly, it has been held that one is not relieved, who had the means of becoming acquainted with the extent of his rights : Crest *v.* Jack, 3 *Watts* 240 ; Hepburn *v.* McDowell, 17 *S. & R.* 383 ; and in Knouff *v.* Thompson, 4 *Harris* 361, it was ruled, that silence does not estop when the party's deed is on record. It should never be forgotten, that there is a wide difference between silence and encouragement.

Inasmuch as the operation of an estoppel is ordinarily to prevent

[Hill *et al. v.* Epley *et al.*]

proof of the truth, and in such a case as this, to pass title to land without writing, it would seem indispensable that what is necessary to estop should appear affirmatively: Commonwealth *v.* Moltz, 10 *Barr* 531.

Applying now these principles to the case in hand, it may be asked where is the affirmative evidence of fraud which is necessary to constitute an estoppel? Intended fraud is out of the question, for at the time of the sale, and for three months previous, the deed to David Witherow and Samuel Witherow was on record, and instead of active encouragement to Peter Epley to purchase, David gave notice to the sheriff that he claimed an undivided moiety of the land, and requested that his claim should be made known. If then he be estopped at all, it must be because proof of his title would operate as a fraud upon Epley, the purchaser. But, as has been seen, if Epley had notice of David Witherow's title, he could not be defrauded by mere silence; and such indeed was the view of the court below, for they charged the jury in effect, that if Epley had seen the deed on record there was no estoppel. The deed was upon record, and being there it was constructive notice to all the world. All the authorities agree that there is no difference in legal effect between actual and constructive notice. In the judgment of the law, therefore, Peter Epley knew, at the time he purchased, that David Witherow was the owner of one-half the land. Indeed, he could not have seen the deed to Samuel without being apprised of David's title. But, if he had not actual knowledge, as well as constructive, it was due to his own negligence and folly in not examining the record, as every purchaser at a sheriff's sale is bound to do, and he cannot build an estoppel upon his own default.

Clearly, if David Witherow had not attended the sheriff's sale, nothing would have been required of him, after he had his deed upon record. This is conceded. But, if it be admitted, that his presence at the sale imposed upon him the duty of giving other notice than that which his recorded deed furnished, and which was consequently known to Epley, it must be because he saw that the purchaser was still acting under an erroneous belief that the whole title was somehow in Samuel. Nothing else could make his silence work a fraud. But how could he see that? And how is such knowledge affirmatively brought home to him? There is no evidence of any such erroneous belief. The land was being sold as the property of Samuel Witherow, it is true. But Samuel had an interest in the land. Neither the execution, nor the sheriff, nor the crier, asserted that that interest amounted to the entire fee simple, or to an estate in severalty. The sheriff had no right to define what the interest was. The writ was just such an one as it would have been, if it had been known by every person present at the sale that Samuel Witherow owned but an undivided

[Hill *et al. v.* Epley *et al.*]

moiety.   It is impossible, under such circumstances, to see how David's silence could be construed into an admission that Samuel owned the whole, because there was no assertion by the writ, by the sheriff, or by any one, that he did.   It is equally impossible to discover how David could have supposed that Epley was bidding under such an impression, for there was nothing to warrant it, and a deed on record showing the contrary, of the contents of which not only the law presumed, but he had a right to presume, every bidder knew.   If the sheriff had offered for sale a tract of land belonging to David in severalty, in which Samuel had no interest, the consequences of silence might have been different.

But there was actual notice given at the sale.   It is true, the crier did not, as he was requested, inform the bidders that David Witherow claimed one undivided half of the land, as the court below were of opinion he should have done, but he did give notice, with a loud and distinct voice, *that it was the interest of* Samuel Witherow *only* in the land which he was selling.   This he repeated several times, and of this, requested those present to take notice. This, however, the court below held insufficient.

It is established law in Pennsylvania, that whatever puts a party on inquiry amounts to notice ; provided, the inquiry becomes a duty, as it always is, with a purchaser ; and would lead to the discovery of the requisite fact by the exercise of ordinary diligence and understanding: Jaques *v.* Weeks, 7 *Watts* 267 ; Hood *v.* Fahnestock, 1 *Barr* 474.   Mere rumors, it is true, do not amount to notice ; but an announcement by the officer of the law, engaged in the sale of property, is more than a rumor.   Now, what must have been the impression made upon the mind of a man, of ordinary understanding, by the crier's repeated announcement, in the form of a notice, that he was selling *only* Samuel Witherow's interest in the land ; and by his request that the bidders should take notice of it?   It is argued, that inasmuch as the execution process was against Samuel Witherow alone, it was saying no more than what the law implied, and every one was bound to know.   This, however, is a mistake ; for the defendant's whole case rests upon the assumption that the sale, without notice, would pass not only Samuel's interest, but also David's, by way of estoppel.   But even if the notice did amount to no more than the writ expressed, it by no means follows, that it was unmeaning, and imposed no duty upon the purchaser.   It would not be in human nature, in such circumstances, to stifle the inquiry, Why such an announcement? If it mean nothing, why repeated? Why repeated with emphasis, and why is attention particularly called to it? " ONLY *Samuel Witherow's interest*" is a negative pregnant. To us the implication seems irresistible, that there was some other existing interest.   We cannot shut our eyes to the manner in which sheriffs' sales are usually conducted.   Nor can we forget

[Hill *et al. v.* Epley *et al.*]

that the maxim is, and is known to be, "*caveat emptor,*" not *caveant omnes proprietores.* If Peter Epley, after having been thus particularly warned to notice what he was purchasing; after having been told that the interest in the land of no other one than Samuel Witherow was being sold; did not take the trouble to step into the recorder's office, only a few feet distant, and see the deed to David on record, he did not act as prudent men commonly do. If he remained ignorant of David's right, his ignorance was wilful, and he is without equity. It should be observed, that David's title was not a secret trust. It was a legal right, and was to be found where ordinary prudence would direct her first look.

We have pursued this subject far enough. The court below based the instruction which they gave upon Epley *v.* Witherow, 7 *Watts* 163, a case, the authority of which we cannot admit. We discharge one of our most unpleasant duties, when we are constrained to dissent from a prior decision of this court; and the duty will never be performed, except under the pressure of the most imperative necessity. Happily, Epley *v.* Witherow was a former trial of the same controversy; and overruling it, as we now do, we only deny that the facts proved in this case amount to an estoppel.

Judgment reversed, and a *venire de novo* awarded.