## Pennsylvania Railroad Company v. Penn-Del Supply Co., Inc.

*Gawthrop & Greenwood,* for plaintiff.

*Franklin L. Gordon,* for defendant.

KURTZ, J., September 20, 1963.—Plaintiff, the carrier, has sued defendant, consignee, for the balance of the established tariffs it claims to be due, growing out of the shipment of a carload of oats from a point in the Province of Manitoba, Canada, to Toughkenamon, in this county. The pleadings consist of a complaint and an answer thereto with new matter. Plaintiff has moved for judgment on the pleadings. In our consideration of that motion we must accept as true, even though denied, all averments of fact made by the opposing party which are material and relevant; but inferences and conclusions which are drawn from and erroneously interpret a written instrument which is part of the record are not admitted, nor are conclusions of law: London v. Kingsley, 368 Pa. 109 (1951); DiMascio v. Transcontinental Gas Pipe Line Co., 10 Chester 345 (1962). Such judgment should only be entered when the right is clear and free from doubt: Mather Estate, 410 Pa. 361 (1963); London v. Kingsley, supra.

From the pleadings of the opposing party and the bill of lading attached to the complaint as an exhibit, we learn that on or about August 14, 1959, Central Grain Co., Ltd., delivered to Canadian National Railways a carload of oats for shipment to Toughkenamon, Pa. In the bill of lading covering that shipment, Jas. L. Kerr, the president of defendant corporation, was named as the party to be notified. In that portion of the bill of lading which dealt with the matter of the payment of charges, the following language was printed: "If charges are to be prepaid, write or stamp here, 'To be Prepaid.'" Under the above words was typed: "Prepaid to Ft. William Only. Collect Freight Beyond at Destination."

Said oats were delivered by plaintiff carrier to defendant at Toughkenamon on or about August 31, 1959. On that date the National Bank and Trust Company of Kennett notified defendant that the invoice covering the oats and the freight thereon, together with a sight draft and the bill of lading had been forwarded to it for collection, whereupon defendant, "relying on the fact that the consignor had agreed to pay the freight charges to the Plaintiff and that the Plaintiff had extended the consignor credit for that purpose and had undertaken to look to the consignor for payment," paid the sight draft including the freight charges due. Plaintiff made no demand upon defendant for the payment of the sum for which judgment is here sought until May 3, 1960, some five months after delivery.

In our approach to the problem thus presented we start with the proposition that although the shipper who calls upon a public carrier to transport goods to a consignee designated by him is primarily liable for the lawful charges resulting from that transportation, nevertheless, a person may also be liable if he takes possession of the goods or assumes to control the shipment. The carrier's right to collect freight charges from consignee is based upon an implied contract, and from consignee's receipt and acceptance of the freight such a contract will ordinarily be implied. Whether demand is made upon consignee for payment at the time of delivery or not is immaterial: Baltimore and Ohio Railroad Company v. Feldbaum, 176 Pa. Superior Ct. 394 (1954). It has also been held that the obligation of consignee who accepts the shipment to pay is not released by equitable considerations: Acme Fast Freight, Inc. v. Heffler, 197 Pa. Superior Ct. 633 (1962), affirming per curiam 26 D. & C. 2d 575 (1962) ; The Pennsylvania Railroad Company v. De-Marto, 90 Pa. Superior Ct. 216 (1926).

However, the doctrine of equitable estoppel has been invoked in this State against a carrier who seeks to collect the freight charges from the consignee who has accepted the shipment when no unlawful preference will result and where the bill of lading indicated that such charges had been prepaid and the carrier waited a considerable period of time before making demand for payment upon consignee, consignor meanwhile having been adjudicated a bankrupt: Southern Pacific Company v. Valley Frosted Foods Company, 178 Pa. Superior Ct. 217 (1955), citing Davis, Director General, v. Akron Seed & Mill Company, 296 Fed. 675, and United States of America v. Mason & Dixon Lines, Inc., 222 F. 2d 646 (1955).

In Hertz Corporation v. Hardy, 197 Pa. Superior Ct. 466, 474 (1952), it was said regarding the equitable doctrine of estoppel: "To establish an estoppel the one against whom it is sought to be invoked must have had knowledge of the facts and must have intended that his conduct be acted upon. Kirk v. Hartman, 63 Pa. 97. This has been extended to mean that the person acting must either know the true facts or be in a position to become aware of them, Sundheim v. Beaver County Building & Loan Association, 140 Pa. Superior Ct. 529, 14 A. 2d 349, so that to deny what he previously asserted would render him guilty of fraud or of such gross negligence in ascertaining the truth in the matter as amounts to constructive fraud. Bittner v. Quemahoning Coal Co., 271 Pa. 579, 116 A. 42. If this element of fraud is wanting there can be no estoppel. Hill v. Epley, 31 Pa. 331. It is noted that mere negligence is not sufficient to establish constructive fraud; it must be gross or culpable negligence. Northwestern National Bank v. Commonwealth, 345 Pa. 192, 27 A. 2d 20."

In the instant case we find no averments of fact in defendant's pleadings from which the existence of

either actual or constructive fraud on the part of plaintiff may be inferred. Further, at least two of the important elements upon which the court relied in Southern Pacific, supra, are not present here. There the bill of lading indicated that the freight charges were to be prepaid, while here it clearly shows that they were to have been collected at the destination. There consignor's bankruptcy was shown, rendering recovery of the charges paid by the consignee impossible, while here such facts do not appear. In addition, there is no allegation here that plaintiff ever communicated to defendant prior to the time when it paid the charges to the Kennett Bank the fact of its extension of credit to consignor.

In essence this defendant now seeks to be relieved of the consequences of its own error. It paid the wrong person. It paid consignor's collection agent instead of the carrier who performed the service. It now seeks to impose the burden of that error upon plaintiff by asking us to require it to go to the place of business of the consignor, with whom it had no direct contact, and there attempt to effect the collection of funds to which it is entitled.

In our view, sufficient facts to justify our invoking the doctrine of estoppel against plaintiff have not been averred. This case is controlled by the same principles which were applied in Acme Fast Freight, supra. We believe that plaintiff's right to judgment is clear and free from doubt. Accordingly, we will enter an order directing that judgment for plaintiff be entered upon the pleadings.

*Order*

And now, September 20, 1963, plaintiff's motion for judgment on the pleadings is granted. Judgment is hereby entered in favor of plaintiff against defendant in the amount of $743.59.