# Wickham, Appellant, *v.* Twaddell.

*Road law—Plan of lots—Deed—Dedication.*

Where an owner lays out his land in lots according to a plan showing streets and avenues, and the plan is recorded, every person subsequently taking title to a lot has constructive notice of the existence of the streets and avenues. Such a person is a purchaser by implied covenant of the right that the street shall remain open; and the vacation of a street by the municipal authorities will not divest his right to have the space left open as a street. This conveyed right of way as appurtenant to the land is wholly distinct from the public right of passage.

*Estoppel—Silence—Deed—Title.*

Silence will not postpone a title where the party seeking the postponement on the ground of silence is himself aware of the title, nor where it results from ignorance on the part of the owner, nor where, with knowledge of his title, he is ignorant that others are making improvements in ignorance of it.

The owner of a lot in a suburban plan is not required to assume that every newcomer will disregard the notice furnished by the public records, nor to employ a surveyor to ascertain whether his rights had been invaded every time a fence is built, or a hedge planted in a growing town.

*Road law—Deed—Plan of lots—Encroachment on street—Estoppel.*

An owner laid out lands according to a plan showing streets and avenues, and recorded the plan. Deeds were made to various parties for the lots. The deed to the plaintiff made in 1886 referred to the plan. Defendant took title in 1891 by mesne conveyances. His deed did not refer to the plan, but did refer to certain avenues. The land was in an unincorporated town. In 1892 defendant erected fences and planted hedges in such a way as to encroach on two of the streets as laid down in the plan, and referred to in his deed. It did not appear that defendant had actual knowledge of the plan. Plaintiff although living within one square of the defendant's property had no actual knowledge of the encroachment until 1901, when it was discovered by surveys then made. After the discovery he promptly demanded of the defendant that the obstructions should be removed. Upon the defendant refusing to remove the obstructions plaintiff filed a bill in equity. Defendant alleged as ground for estoppel that plaintiff in 1897 had laid out a hedge for a neighbor upon the same line as the line of the defendant's hedge. It appeared that plaintiff's action in the matter was merely a neighborly courtesy. It also appeared that the neighbor's land had been acquired prior to the recording of the plan, and that his rights in the street were different from those of the defendant. *Held,* (1) that plaintiff's remedy was properly in equity; (2) that defendant had constructive knowledge of the existence of the streets; (3) that the defendant could not set up as a defense that the obstructions did not interfere with the present requirements of public travel in the vicinity, and that property had not been depreciated in value by them; (4) that the plaintiff was not

estopped by his delay in objecting to the encroachment; (5) that plaintiff was not estopped by his participation in laying out the neighbor's hedge; (6) that a decree should be entered against the defendant commanding him to remove the encroachment, but with an allowance of sufficient time to permit the hedges to be moved in a proper season of the year.

Argued Nov. 19, 1902.    Appeal, No. 167, Oct. T., 1902, by plaintiff, from decree of C. P. Chester Co., No. 392, in equity, dismissing bill in equity in case of Henry Wickham v. John P. Twaddell.    Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*Isabel Darlington* and *Alfred P. Reid*, with them *Thomas S. Butler*, for appellant.—The plaintiff has a clear legal right: he has an easement in all the streets in the " Plan of Devon " and a legal right to have the same maintained of the width of fifty feet, in accordance with the said plan.    Every lot holder in the said plan has the same easement and the same legal right: Birmingham v. Anderson, 48 Pa. 253; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 604; In re Pearl St., 111 Pa. 565; Fereday v. Mankedick, 172 Pa. 535; Quicksall Philadelphia, 177 Pa. 301; Clad v. Paist, 181 Pa. 148; Osterheldt v. Philadelphia, 195 Pa. 355; Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92; Smith v. Union Switch & Signal Co., 17 Pa. Superior Ct. 444; Witman v. Smeltzer, 16 Pa. Superior Ct. 285; Richardson v. City of McKeesport, 18 Pa. Superior Ct. 199; Geible v. Smith, 146 Pa. 276; Cannon v. Boyd, 73 Pa. 179; Overdeer v. Updegraff, 69 Pa. 110; Zell v. Universalist Society, 119 Pa. 390; Gunson v. Healy, 100 Pa. 42; Pierce v. Cleland, 133 Pa. 189.

The jurisdiction of equity, by injunction, to prevent and restrain nuisances to rights of way, is well settled; if the right is clear, it need not be first established by suit at law, nor is it necessary to prove special damage to entitle to relief, nor does the damage to the defendant affect the right to relief: Keppel v. Lehigh Coal & Nav. Co., 200 Pa. 649; Fricke v. Quinn, 188 Pa. 474; Bussier v. Weekey, 11 Pa. Superior Ct. 463; Wal-

ters v. McElroy, 151 Pa. 549; Weaver v. Getz, 16 Pa. Superior
Ct. 418; Ferguson's Appeal, 117 Pa. 426; Manbeck v. Jones,
190 Pa. 171; Hunter v. Wilcox, 23 Pa. C. C. Rep. 191;
Hacke & Hugus's App., 101 Pa. 245; Com. v. Pittsburg, etc.,
R. R. Co., 24 Pa. 159; St. Andrew's Church's App., 67 Pa.
512; Pepper & Lewis Dig. of Dec. col. 14,061.

The plaintiff is entitled to his remedy by injunction at any
time within the twenty-one years which would bar his legal
right, and the mere fact of delay in seeking equitable relief is
not laches and will not defeat his right to the relief sought:
Weaver v. Getz, 16 Pa. Superior Ct. 418; Bell v. Ohio &
Penna. R. R. Co., 1 Grant, 105.

The conduct of the plaintiff is free from laches: Bell v. Ohio
& Penna. R. R. Co., 1 Grant, 105; Westhaeffer v. Lebanon,
etc., St. Ry. Co., 163 Pa. 54; Penna. Lead Co.'s App., 96 Pa.
116; Pile v. Pedrick, 167 Pa. 236.

*John J. Pinkerton*, for appellee.—The knowledge of the ap-
pellant of the existence of the Plan of Devon, and that there
was written on it " width of all avenues fifty feet," imposed
upon him the duty to speak when, ten years ago, he saw the
appellee planting his hedges within the fifty feet thus desig-
nated, and his failure to speak then estops him now from asking
that a mandatory injunction be issued by a court of equity
compelling the appellee to remove his hedges from the ground
over which he claims to have an easement: Logan v. Gardner,
136 Pa. 588; Chapman v. Chapman, 59 Pa. 214; Arnold v.
Cornman, 50 Pa. 361; Mayer's App., 73 Pa. 164.

Wickham having stood by and permitted Twaddell, at large
expense, to plant hedges around his premises, and then allow
these hedges to grow and attain their full perfection and beauty,
without taking any legal steps to prevent it for so long a
period as ten years, is guilty of undue laches, and cannot now
successfully invoke the aid of a court of equity in compelling
Twaddell to remove them: Neely's App., 85 Pa. 387; Todd's
App., 24 Pa. 429; Orne v. Fridenberg, 143 Pa. 487; Penna.
R. R. Co.'s App., 125 Pa. 189; Cox et al. v. P. W. & B. R.
R. Co., 10 W. N. C. 552; Morris, etc., R. R. Co. v. Prudden,
20 N. J. Eq. 530.

A mandatory injunction is not the absolute right of either

party, even in a case where a legal right is established, but rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case : Richards's App., 57 Pa. 105 ; Becker v. Ry. Co., 188 Pa. 484 ; Grey v. R. R. Co., 1 Grant, 412 ; Rennyson v. Rozell, 106 Pa. 407.

OPINION BY W. D. PORTER, J., May 19, 1904 :

The plaintiff and defendant are residents and property owners in the unincorporated town of Devon, located in Easttown township, Chester county, Pennsylvania, and both claim title through Coffin and Altemus, the dedicators of the "Plan of Devon." The plaintiff seeks to have the defendant enjoined from occupying for private purposes and excluding the public from certain portions of Dorset and Exeter avenues, and maintaining fences and hedges within the lines of said streets as dedicated by their common predecessors in title. The learned judge of the court below found the following facts, viz : Lemuel Coffin and Joseph B. Altemus were in 1884 the owners of a tract of land, of which the lots of the plaintiff and defendant are a part, and caused the same to be laid out and plotted in blocks or squares, separated by avenues or streets. This was called "Plan of Devon," and was recorded in the recorder's office of Chester county on September 10, 1884. Coffin and Altemus, by deed dated March 9, 1886, conveyed to the plaintiff, " All those two certain lots or pieces of ground contiguous to each other, situate in the township of Easttown in the county of Chester and State of Pennsylvania, designated as Nos. 112 and 113 on the ' Plan of Devon ' ; " the land was further described by metes and bounds and called for Devon and Waterloo avenues, two of the streets upon said plan. Coffin & Altemus, by deed dated May 1, 1889, conveyed to William T. Tiers a tract of land situate in said township, which tract was, by deed dated May 3, 1889, conveyed by Tiers to the " South Devon Park." The corporation last named, by deed dated November 16, 1891, conveyed to John P. Twaddell, the defendant, " All that certain tract or piece of land situate in Easttown township, described according to a survey and plan thereof made by Samuel W. Garrigues, surveyor, on the fourth day of November, 1891," the land being further described by metes and bounds and calling for Water-

loo, Exeter and Dorset avenues and the lands of Dr. J. M. Adler as adjoiner. In 1892 the defendant erected his fences and planted his hedges, and in doing so included with his lot five feet of Exeter and Dorset avenues, extending along the entire frontage upon those streets, as laid down upon the "Plan of Devon." The learned judge further found that the defendant did not have actual knowledge of the existence of the "Plan of Devon" or that his fences and hedges were out in the avenues until about January, 1902. The finding of fact upon which the learned judge of the court below based his decree was as follows: "At the time of defendant's purchase the plaintiff lived within one square of the defendant's tract and has continued to reside there ever since; knew that all the avenues on the "Plan of Devon" were laid out fifty feet in width; knew of the planting of defendant's hedge, and in 1897, superintended the planting of the hedge for Dr. Adler which he placed where his fence stood and in line with defendant's hedge, not being aware at the time, nor until some time in 1901, that his and defendant's hedge encroached five feet upon the avenue as laid out in the "Plan of Devon."

The deed of Coffin & Altemus to Tiers and that of the latter to South Devon called for the center line of Waterloo, Exeter and Dorset avenues as boundaries. These avenues, as indicated by said deeds, correspond exactly with their location upon the recorded "Plan of Devon," and there is no evidence in the case from which it could be inferred that these avenues came into existence in any other way than through a dedication by the "Plan of Devon." The deed of Coffin & Altemus to Henry Wickham, the plaintiff, was, on March 12, 1886, duly recorded, and referred to the "Plan of Devon," and this had the same force and effect as if the plan, which was then of record, had been incorporated or copied into the deed. We are therefore to read the deed with the plan in it, and Exeter and Dorset avenues there appear as streets laid out for the use of the lot owners. Neither the grantors, nor those who through them subsequently acquired title to other portions of the tract could subsequently make changes which would deprive Wickham of the right which he had acquired to use as public highways the streets located upon the plan; Birmingham v. Anderson, 40 Pa. 506, and 48 Pa. 253. The

right passing to the plaintiff was not the mere right that he might use the streets thus indicated, but that all persons might use them; Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92; Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194; Ermentrout v. Stitzel, 170 Pa. 540 ; Quicksall v. Philadelphia, 177 Pa. 301. Such an owner, where the street has been laid out or established by his grantor is a purchaser by implied covenant of the right that the street shall remain open, and the vacation of the street by the municipal authorities will not divest his right to have the space left open as a street. This conveyed right of way as appurtenant to the land is wholly distinct from the public right of passage : Dovaston v. Payne, 2 Sm. L. C. 167; In re Melon Street, 182 Pa. 397. The defendant may not have had actual knowledge that the " Plan of Devon" and the deed of the plaintiff constituted a dedication of avenues of the width of fifty feet, but he had constructive notice of what appeared of record, and which an examination of his title must have necessarily revealed. The defendant did, however, have actual knowledge that the lot to which he acquired title was surrounded by avenues on three sides. His deed called for Exeter and Dorset avenues as boundaries; the land was situated in a township and this call could not have indicated simply streets projected by a municipality. The defendant admitted in his testimony that he knew those avenues had been projected by private individuals, and that when he purchased he found the avenues in existence and that a strip along their middle lines had been macadamized as a cartway by the former owners of the property. Whether the defendant knew of the existence of a paper plan is of little consequence, his own deed and the evidence upon the ground clearly indicated to him that the former owners had divided this property into lots separated by streets for the convenience of lot owners, and he must be conclusively presumed to have known that every lot owner on the plan enjoyed the same right which he by his deed acquired; the right that those streets should forever remain open for the use of all, that the streets had been laid out and, to a certain extent improved by former owners, and that they had sold lots fronting upon those streets. He is presumed to know that those facts constituted a dedication to public use in favor of the lot owners.

The deed by which the defendant acquired title to his property recited that a plan thereof had been made by Samuel W. Garrigues, surveyor, who was called as a witness and testified that he found upon the ground stones marking the center lines of the avenues in question, that he examined the plan of record and found that the avenues as indicated by it were fifty feet wide, that he made the survey in view of that fact, and placed " range stones " in the street five feet outside of the building line ; he further testified that those " range stones " were still in place and that the fence and hedge in question were outside of them in the street. The material facts of the dedication of the avenues, the defendant's encroachment upon them, and the legal right of the plaintiff were clear and undisputed. The right being clear, the remedy in equity by injunction is the proper one for its enforcement: Weaver v. Getz, 16 Pa. Superior Ct. 418; Smith v. Union Switch & Signal Co., 17 Pa. Superior Ct. 444; Ferguson's Appeal, 117 Pa. 426; Fereday v. Mankedick, 172 Pa. 535 ; Manbeck v. Jones, 190 Pa. 171; Hacke's Appeal, 101 Pa. 245.

The learned judge of the court below arrived at the conclusion that there had been a dedication of the avenues, and that the defendant was maintaining a continuous trespass upon the rights of the plaintiff and other lot holders in the plan, but he held that the plaintiff must be denied the remedy by injunction because of his delay in asserting his right. The plaintiff lived within one square of the defendant's property for almost ten years after the fences were erected and hedges planted, but did not abut on either Exeter or Dorset avenues. The property across the avenues from that of the defendant was uninclosed and not improved, and there was nothing upon the ground to indicate to an observer who did not employ a surveyor to locate the avenues that the full width of fifty feet had been encroached upon. There was some evidence that James H. Dawson had told the plaintiff that he, Dawson, had told the defendant that he, the defendant, " was getting the street too narrow," as the roads had been laid out for fifty feet. It did not appear, however, that this was communicated to Wickham before the planting of the hedge was completed, nor did it distinctly appear that Dawson reported to Wickham that the hedge as finally planted encroached upon

the street. The learned judge was undoubtedly correct in finding, under the evidence, that Wickham had no knowledge of the encroachment upon the street until 1901. When, in the year 1901, other properties were about to be improved, the surveyors in locating the avenues discovered that the defendant had encroached upon the streets. The plaintiff promptly informed the defendant of his rights, and demanded that the obstructions be removed from the streets; there followed a correspondence between the parties in which the plaintiff constantly insisted upon his right, and upon the defendant's final refusal to recede from his occupancy of the avenue this bill was filed, on February 7, 1902. There was no evidence whatever that the plaintiff encouraged the defendant to place his hedge and fence in the avenues. He was ignorant that they were so placed until long afterwards, and upon discovery of the fact promptly demanded their removal. Mr. Justice STRONG said : " It seems also to be well settled that silence, in some cases, will estop a party against speaking afterwards. Thus, if one suffers another to purchase and expend money upon a tract of land and knows that that other has a mistaken opinion respecting the title to it, and does not make known his claim, he shall not afterwards be permitted to set up a claim against the purchaser. His silence then becomes a fraud. But silence without such knowledge works no estoppel. It is only when silence becomes a fraud that it postpones. . . . The doctrine of estoppel, by matter in pais, resting thus upon the supposed existence of fraud, it is essential to its being allowed in any case, that it would work an injury if the party alleged to be estopped should be permitted to set up his case. If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them even though they would be conclusive against his right if not contradicted. . . . If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel. Accordingly, it has been held that one is not relieved who had the means of becoming acquainted with the extent of his rights; and in Knouff v. Thompson, 16 Pa. 357, it was ruled that silence does not estop when the party's deed is on record. It should never be forgotten that there is a wide difference between si-

lence and encouragement : " Hill v. Epley, 31 Pa. 331; Logan
v. Gardner, 136 Pa. 588.    The deed of Wickham and the
" Plan of Devon " were upon record, and being there were
constructive notice to all the world.    All the authorities agree
that there is no difference in legal effect between actual and
constructive notice.    In the judgment of the law, therefore,
the defendant knew that the width of the avenues upon which
he encroached was fifty feet : Knouff v. Thompson, 16 Pa.
357 ; Hill v. Epley, supra.    Silence will not postpone a title
where the party seeking the postponement on the ground of
silence is himself aware of the title, nor where it results from
ignorance on the part of the owner, nor where, with knowledge
of his title, he is ignorant that others are making improvements
in ignorance of it : Woods v. Wilson, 37 Pa. 379 ; Thompson's
Appeal, 126 Pa. 367.    The mere silence of the plaintiff, he be-
ing ignorant of the encroachment at the time the defendant
invested his money in the hedges which encroached upon the
streets, would not estop the former from asserting his right
upon discovery of the encroachment.    The owner of a lot in a
suburban plan is not required to assume that every newcomer
will disregard the notice furnished by the public records, nor
to employ a surveyor to ascertain whether his rights have been
invaded every time a fence is built or a hedge planted in a grow-
ing town.    We are of opinion that the mere silence of the plain-
tiff, under the circumstances of this case, did not justify the
court below in holding him estopped to assert his rights in
equity.

The one supposed, positive act of acquiescence by the plain-
tiff in the maintenance of the obstructions in the avenues, to
which the court below gave great weight, was the part which
he took in the planting of the hedge of Dr. Adler.    The facts
with regard to the occurrence were undisputed.    Adler had
acquired title to his lot by deed from Coffin & Altemus, in
1881 ; he had maintained a fence in front of his lot on Dorset
avenue for years before the defendant purchased his lot and
placed in the street the obstructions complained of.    Adler
determined in 1897 to replace the fence by a hedge; Wickham,
who understood how such work ought to be done, undertook
as an act of neighborly courtesy to see that the hedge was prop-
erly planted.    He assumed that the old fence on the Adler lot

and the hedge of the defendant on the lot adjoining correctly indicated the location of Dorset avenue, and planted the hedge on the Alder lot upon the same line. The learned judge was of the opinion that, " in doing so, he (Wickham) was quite as negligent as the defendant had been, by extending the line of defendant's hedge along Dr. Adler's property and thus indorsing it as the correct line, he may to some extent be responsible for other owners on the same avenue treating it as ʼsuch, and setting their fences and hedges accordingly." We are of opinion that the learned judge gave undue weight to this act of the plaintiff in determining the rights of the parties to this proceeding, as they arose out of the evidence which he was called upon to consider. Positive acts tending to mislead one ignorant of the truth, which do mislead him to his injury, are a good ground of estoppel, and ignorance of title on the part of him who is estopped will not excuse his act: Chapman v. Chapman, 59 Pa. 214. The hedges and fences of the defendant had been erected and planted in 1892 ; he certainly was not misled into making the erroneous location by the act of defendant in superintending the planting of the hedges along the line of the old fence in front of the Adler lot, which did not occur until five years later. Dr. Adler might possibly have had some ground to complain, but the defendant certainly was not injured. Had the Adler hedge been first planted and the defendant been misled by it into making an erroneous location on Dorset avenue, that might have been ground for refusing an injunction requiring him to remove the obstructions from that avenue, but it would have presented no excuse for his unlawful occupation of a part of Exeter avenue, a street which lies at right angles to Dorset avenue and intersects it at a distance of almost 400 feet from the end of the Adler hedge. The plaintiff might thus have been estopped to assert his rights in equity as to Dorset avenue, but his right to an injunction restraining the unlawful occupation of a part of Exeter avenue would still remain clear. The planting of the hedge upon the lot of Dr. Adler was, for another reason, certainly immaterial to this issue, as clearly appears from the evidence. The right of the owner of the Adler lot in Dorset avenue was certainly different from that which was appurtenant to the lot of the defendant. The

rights of these parties were to be determined under the evidence presented.   Dr. Adler acquired title to his lot by deed from Coffin & Altemus, in 1881 ; Dorset avenue was not then located upon the ground, nor was it shown on any plan of lots which at that time had been laid out.   The " Plan of Devon," as recorded was not laid out until August 30, 1884, and there is no evidence in this case which would warrant a finding that the land covered by Dorset avenue had ever prior to that date been dedicated to public use.   There had been a lithograph plan in existence prior to 1884, but Dorset avenue did not appear upon that plan.   Coffin & Altemus having parted with the title to the Adler lot in 1881, the dedication of the land covered by Dorset avenue to public use in 1884 was, as against the owner of that lot, a nullity.   If the lot of Dr. Adler is subject to an easement for Dorset avenue, as laid out by Coffin & Altemus, it must be because of some fact which in this case was not established by evidence.   Dr. Adler had a right to maintain a hedge in front of his lot along this street, upon a line to which the defendant was not entitled to go.

The case of the defendant was barren of equity.   The only excuses for his intrusion upon the right of his neighbors which he attempted to establish by evidence were :  (1) that streets forty feet wide were sufficient to meet the present requirements of public travel in that vicinity, and  (2)  that property in Devon had not been depreciated in value because of the obstructions which he had placed in the streets.   It was not for the defendant to determine the width of the avenues in a beautiful and growing residential suburb of a great city ; that question had been definitely settled by contract between his predecessors in title and those to whom they had conveyed lots in the plan.   The mere fact that it is difficult to determine the damages sustained by lot owners from an intrusion upon the streets is one of the reasons for exercising equity jurisdiction in cases of this kind, as has been repeatedly held in the cases herein before cited and others to which they refer.   The assignments of error are sustained.

The obstructions maintained by the defendant within the lines of Exeter and Dorset avenues consist in part of growing shrubbery and hedges, which may be much less liable to injury by removal at one season of the year than at another.

188, (1904).]                    Opinion of the Court.

There is no necessity for haste, and the rights of the parties do not require the imposition upon the defendant of a useless hardship; we are therefore disposed to allow him a reasonable time within which to remove the obstructions from the highway.

The decree of the court below is reversed, the bill reinstated, and it is now ordered that a decree issue restraining the defendant from using or occupying any part of Exeter and Dorset avenues, as located by the "Plan of Devon," for any purpose inconsistent with the use of said avenues as streets; and commanding and enjoining the defendant, prior to the first day of January, 1905, to remove from said Exeter and Dorset avenues, the fences and hedges which he has placed thereon, and restore said avenues to the width designated and laid down on the "Plan of Devon;" and it is ordered that the defendant pay the costs upon this appeal and in the court below.