## Oxford Falls Industrial Park, Inc. v. Evans

*Samuel M. Snipes,* for plaintiff.
*Edward Unterberger,* for defendant.

LUDWIG, J., July 27, 1972.—After sitting without a jury at the trial of these two actions to quiet title,[1] we entered a general verdict in favor of defendants, James J. Evans and Edith D. Evans, his wife, and against plaintiff, Oxford Falls Industrial Park, Inc. Following that decision, plaintiff's counsel, citing the Act of April 22, 1874, P. L. 109, sec. 2, as amended, 12 PS §689, requested that we set forth findings of facts and conclusions of law as a basis for the filing of exceptions.[2]

## FINDINGS OF FACT

1. Plaintiff, a Pennsylvania corporation, is the owner of unimproved building lots constituting approximately 17 acres of ground situated in Falls Township, Bucks County.

2. Defendants are the owners of two unimproved building lots having a combined frontage of 40 feet and a depth of 120 feet, situated in the same municipality and separated from plaintiff's tract by an unopened Street (Edward Street), which is 30-feet wide.

3. A common grantor, Rahway Building Company,

---

[1] Both actions involve the same parties and issues and were consolidated for trial. The difference between them appears in the scope of relief requested. See findings of fact no. 6.

[2] According to the report of a pretrial conference, the substance of which was reaffirmed at trial, the parties had agreed as follows: ". . . to a nonjury trial . . . waiving the requirements of findings of fact, conclusions of law or any written 'decision' . . . [and] that the two matters should be consolidated." Upon a stipulation of counsel, the actions were ordered consolidated for trial without a jury, and an evidentiary hearing was held. However, no objection has been made to plaintiff's request for findings and conclusions, nor has the applicability been raised of section 2 of the Act of April 22, 1874, P. L. 109, supra. See Pennsylvania Rules of Civil Procedure 1038 and 1061(a).

subdivided 23 acres into residential building lots, most of them being 20 feet by 120 feet. All of the lots were sold and conveyed in accordance with a subdivision plan dated November 10, 1920, designating the tract as Oxford Valley Heights, Section 2, which was recorded in the Office of the Recorder of Deeds of Bucks County in Plan Book 1, page 81. However, none of the lots nor any part of the subdivision was ever improved, nor the offer of dedication of the streets accepted by Falls Township. After intervening conveyances, plaintiff acquired title to various lots by deeds recorded in the period from 1966 to 1969 both as the result of private sales and of county treasurer's real estate tax sales; and defendants acquired title to their lots by private deed in 1956.

4. The subdivision plan contains eight blocks of lots, and the blocks, which are numbered 7 through 16, are separated from each other by a pattern of five streets.

5. The shape of the subdivision is nearly a square, and the southern boundary is U. S. Route 1, legislative route 281, also known as Old Lincoln Highway. The western boundary of the tract is about 400 feet east of Oxford Valley Road.

6. The pattern of streets shown on the subdivision plan is as follows: Going north from U. S. Route 1 a distance of 240 feet and thereafter at 200-foot intervals are four streets that run east and west. Again going north, they are designated as Edward Street, Warsaw Street, Central Avenue and Rome Avenue. Only one street in the subdivision, Main Street, runs north-south. It is in the middle of the subdivision and forms through-intersections with each of the other streets and a T-intersection with U.S. Route 1. All of the streets go to the perimeter of the subdivision. Action no. 4774, May term, 1968, seeks to quiet title as to Warsaw Street, Rome Avenue and Central Avenue,

and action no. 4572, May term, 1969, as to Main Street north of Edward Street.

7. The even-numbered blocks are on the west side of Main Street and the odd numbered on the east side. At the north side of the subdivision are blocks 7 and 8, and at U. S. Route 1 blocks 15 and 16.

8. Defendants' property consists of lots 8 and 9 on the north side of block 16 with frontage on Edward Street, beginning 240 feet west of Main Street. It is now a dense woodland, with many trees as much as 50-foot high, and this is characteristic of the entire subdivision north of Edward Street. From any street on the subdivision plan, there is access to defendants' property by way of Main Street and Edward Street, including access directly to U. S. Route 1.

9. Plaintiff owns all of blocks 7 through 15 with the exception of three lots at the southwest corner of block 14 and four lots at the southwest corner of block 15. Plaintiff's lots comprise all of the frontage on Warsaw Street, Central Avenue and Rome Avenue and on Main Street north of Edward Street. None of these streets has ever been used or opened, nor has Edward Street, where defendants' property is located.

10. Main Street from U. S. Route 1 to a point 20 to 40 feet south of Edward Street in the last few years has been blacktopped. There are sundry small businesses along U. S. Route 1 on the south side of blocks 15 and 16: a used car lot, a bicycle shop, an automobile repair shop, and a dog grooming parlor.

11. The entire area covered by the subdivision plan is zoned light industrial.

12. Plaintiff desires to replace the street pattern of all the streets north of Edward Street, but has not offered a specific street plan as a substitute.

13. The nature and use of the properties and im-

provements, if any, abutting the subdivision on the north, east and west does not appear of record.

14. Plaintiff has obtained decrees in these actions to quiet title extinguishing "the right of user" of all of the present owners of lots in the subdivision known as Oxford Valley Heights No. 2 other than defendants, James J. Evans and Edith D. Evans.

## DISCUSSION

Between 1966 and 1969, plaintiff, Oxford Falls Industrial Park, Inc., acquired title to most of the building lots in a dormant and undeveloped residential subdivision located in Falls Township, Bucks County. This subdivision, known as Oxford Valley Heights, Section No. 2, had been laid out and the ground sold off in lots by the Rahway Building Company in accordance with a plan recorded in 1920. The street pattern shown on the subdivision plan consists of four interior streets. These run parallel to U. S. Route 1, which borders the subdivision on the south and is the only adjacent public highway. The sole access to that highway is designated on the plan as Main Street, which bisects the subdivision and forms through-intersections with the other proposed streets. None of the subdivision streets have been used, improved or opened excepting the Main Street entrance, which was blacktopped a few years ago. Nor was the offer of dedication ever accepted by the municipality. A number of small establishments now dot the perimeter of the subdivision facing U. S. Route 1, but otherwise this tract has become overgrown with woods.

As shown on the plan, the proposed interior street nearest U. S. Route 1 is named Edward Street. Plaintiff succeeded in assembling ownership of all of the frontage along the three interior streets to the north of

Edward Street and away from U. S. Route 1. As to these, it brought an action to quiet title seeking in the words of the complaint "to extinguish the right of user" in the subdivision's nine remaining property owners.[3] Later, it brought another action to quiet title seeking the same relief as to that portion of Main Street north of Edward Street, where it had also obtained the entire frontage. Defendants, James T. Evans and Edith D. Evans, his wife, who had acquired two building lots in 1956 with frontage along Edward Street, are the only parties to have interposed an objection. Their property does not abut the streets in issue. Nor do the present actions look toward the alteration of any part of Edward Street or south thereof on Main Street, which is defendants' access route to and from U. S. Route 1.

Defendants contend that where building lots are conveyed by reference to a plan of subdivision, a grantee receives an easement in all of the streets shown thereon that are not then opened or projected for opening, a private right that is never extinguishable merely for nonuse or lack of serviceability. While plaintiff agrees that under Rahn v. Hess, 378 Pa. 264 (1954), this is a correct statement of Pennsylvania law as to an abutting property owner, it asserts that the case is one of first impression as to the interest of

---

[3] Seven of these property owners were served personally. Defendant, Rahway Building Company, was served by publication, its whereabouts being unknown. It is not clear from plaintiff's complaints or the statement of its chain of title whether Rahway conveyed the beds of the streets to its grantees and, in turn, whether plaintiff became the owner. See Kramer Appeal, 438 Pa. 498, 502-93 (1970). This question, however, has not been raised, and we will presume the applicability of the public street rule of Rahn v. Hess, 378 Pa. 264, 270 (1954). Query: Even if the conveyances of the lots included title to the middle of the street, does Rahway still own the intersections?

a nonabutting owner. We are urged to adopt views held in other jurisdictions that a nonabutting owner's rights extend only to those streets within the subdivision that are necessary to the enjoyment of his property or that are materially beneficial and add to its value.[4] Research persuades us, however, that our appellate courts have unequivocally decided this question, and that in Pennsylvania a nonabutting owner occupies the same position as an abutting owner with respect to having a right of easement in the streets of a subdivision.

The argument here advanced by plaintiff was dismissed in Travaglia v. Weinel, 191 Pa. Superior Ct. 323 (1959), which affirmed a decree restraining defendants from maintaining a fence across an unopened street that abutted their corner property. The opinion states, at 191 Pa. Superior Ct. 327:

"The defendants endeavor to distinguish this case from the Rahn case on the ground that the plaintiffs are not denied access to their respective lots by reason of the obstruction of Fourth Street. This question has been clearly ruled in the case of Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co., 240 Pa. 519, 527, 87 A. 968, in the following language: 'The land of appellant did not abut on the vacated streets and this is an important fact to be considered in the assess-

---

[4] One view, known as the "necessary rule" or "narrow" view, is that a subdivision owner's right is limited to the abutting street and such streets as are necessary to obtain access to a public highway. Another, known as the "beneficial" or "full" enjoyment rule" or "intermediate" view, defines the rights of an owner in terms of such streets within the subdivision as would reasonably affect the use and value of the property. The majority of jurisdictions, including Pennsylvania, adhere to the "broad" view that the owner's right accrues as to all of streets within a subdivision where a conveyance is made with reference to a plan. These views and cases supporting them are discussed in Annotation, "Conveyance of lot with reference to map or plat as giving purchaser rights in indicated streets, alleys, or areas not abutting his lot": 7 A. L. R. 2d 607-67.

ment of damages, but our cases hold that the purchasers of lots from the proprietor of a plan upon which streets are plotted, acquire an easement in all of the streets of the plan, and that this easement is appurtenant to the land of every lot owner.' See also Cohen v. Simpson Real Estate Corp., 385 Pa. 352, 355, 356, 123 A. 2d 715."

Plaintiff in the case at bar does not close its eyes to the existence of such language in the Pennsylvania decisions, but insists on having it regarded as obiter dictum. All of such cases, says plaintiff, factually involved abutting property owners. This is erroneous; e.g., as to nonabutting properties, McCall v. Davis, 56 Pa. 431, 433, 434 (1868); Titusville Amusement Co. v. Titusville Iron Works Co., 286 Pa. 561, 568 (1926); Wickham v. Twaddell, 25 Pa. Superior Ct. 188, 191, 192 (1904); Stivason v. Serene & Serene (No. 1), 80 Pa. Superior Ct. 1, 4-5 (1922); Travaglia v. Weinel, supra, at 325. See also O'Donnell v. Porter Co., 238 Pa. 495, 500 (1913); Highland Sewer and Water Authority v. Engelbach, 208 Pa. Superior Ct. 1, 7 (1966).

Further, plaintiff mistakenly invokes Cohen v. Simpson Real Estate Corporation, 385 Pa. 352 (1956), for the view that an easement may not be enforceable if it is of no practical value. Cohen certainly mentions this as a make-weight consideration in an equity action by a nonabutting owner, but there the street in question had been opened to the public prior to the conveyance of any property. Mr. Chief Justice Horace Stern pertinently differentiates that case from the category of the instant one as follows: ". . . there are two well established principles of law. The one is that the grantee of a lot which is sold according to a plan of lots on which streets . . . *not previously opened or projected as public streets* are plotted by the grantor, acquires an easement over all the streets of the

plan as a private right of property arising out of the grant; the easement thus created is independent of the dedication of the plotted streets to the public use and survives the abandonment of the public right. Nor would the fact that plaintiff's property does not abut [the streets] militate against her claim if she had any right of easement under the principal stated.

"The second principle, sharply distinguished from the other, is that, where there *has been a prior opening or projection by a municipality* . . . a subsequent purchaser of a lot which is part of the plan of lots obtains no private right to or easement over those streets. In such a situation there is negatived any implied covenant that the grantee should have private rights in the streets in addition to the right of the public therein": 385 Pa. at 355-57 (Italics in original. Footnotes omitted.)

Plaintiff has offered no argument in this case other than that defendants never were granted an inalienable property right in all of the subdivision's streets. More significantly, it has not presented any crystallized reason for *extinguishing* such rights. As it agrees, the Act of May 9, 1889, P. L. 173, 36 PS §1961, which imposes a 21 year limitations period on the exercise of public rights in subdivision streets, does not operate in derogation of private easements: Rahn v. Hess, supra, and Travaglia v. Weinel, supra. Moreover, the fact of nonuse or the passage of time have not been argued and either separately or in combination would not amount to abandonment or to adverse possession. See Hatcher v. Chesner, 422 Pa. 138, 141 (1966). Plaintiff's conclusionary assertion, as expressed in the complaint, that the street pattern proposed by the Rahway Building Company in 1920 does not conform to modern planning standards may be correct, but it is unsupported by the record and, at best, is

not a cognizable justification for depriving defendants of their property rights. No statute of limitations runs in favor of the original grantor or grantees under him: Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad, supra, at page 529, and Stivasen v. Serene & Serene (No. 1), supra, at page 8.

Even if it were established that all utilitarian considerations were on the side of the plaintiff, this would not overcome defendants' legal objection. As appropriately commented upon in Chambersburg Shoe Mfg. Co., supra, at page 523, the rights at stake are essentially contractual and, hence, not subject to unilateral abridgement. The opinion states:

"[An] owner can do what he chooses with his own land. He may sell and convey it as an entire tract, or he may sub-divide it into a plan of lots, showing streets and alleys, and when he has done so the law says there is an implied covenant to dedicate such streets to public use, or at least to the use of all lot owners and as a necessary incident the use of the public; but this covenant amounts to nothing more than a contractual relation between the interested parties and their successors in title, that such streets shall not be closed, or appropriated to a different purpose, or be diverted to a different use by the grantor, or anyone holding title under him, or by any other person exercising simply the rights of an individual owner or purchaser . . ." In other words, as applied to the case before us, however vestigial may be the land use and traffic circulation design once contemplated in the subdivision plan of Oxford Valley Heights, section 2, defendants' interest therein may not be subverted for a private purpose without their consent. See Rahn v. Hess, supra, at page 270; Cox's Incorporated v. Snodgrass, 372 Pa. 148, 152 (1952).

## CONCLUSIONS OF LAW

1. Appurtenant to defendants' building lots is an easement in all of the streets shown on the subdivision plan of Oxford Valley Heights, Section 2, including Warsaw Street, Central Avenue, and Rome Avenue and Main Street north of Edward Street.

2. The easement arose upon the original conveyance of building lots with reference to the subdivision plan, there being an implied covenant or grant that the streets appearing thereon would forever be available for the use of the owners of such lots and their successors.

3. Plaintiff has not established any legal justification or basis for the termination of that easement, which would amount to a taking of private property.

For the foregoing reasons, we entered a verdict in favor of defendants, James J. Evans and Edith D. Evans, his wife, and against plaintiff, Oxford Falls Industrial Park, Inc.